# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
November 9, 2012

Lyle W. Cayce
Clerk

No. 11-11176

JUNIPER NETWORKS, INC.,

    Plaintiff-Appellee

v.

FENNER INVESTMENTS, LTD.,

    Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-00150-M

Before KING, SMITH, and BARKSDALE, Circuit Judges.

KING, Circuit Judge:[*]

  This appeal presents the question whether a settlement agreement between the parties, Juniper Networks, Inc. and Fenner Investments, Ltd., gave Juniper a license to practice Fenner-owned patents for products that did not exist when the agreement took effect. The district court held that the agreement did so, and granted summary judgment for Juniper. We reverse and remand.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-11176

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff-Appellee Juniper Networks, Inc. ("Juniper") is a publicly held corporation that develops, manufactures, and sells network infrastructure products. Defendant-Appellant Fenner Investments, Ltd. ("Fenner") is the owner of patents that Peter Fenner invented and assigned to it. Fenner does not practice any of these patents, which involve computer network technology.

In 2005, Fenner sued Juniper for patent infringement. The only Juniper product at issue was the M20, an Internet router. The parties entered into a Settlement Agreement and Release (the "Settlement Agreement") on May 30, 2006 (the "Effective Date") to "resolve any and all differences with respect to the Fenner Patents as defined below, with regard to the Accused Products as defined below, and to enter into an agreement for certain releases and covenants not to sue."

The key provisions of the Settlement Agreement are as follows:

**1.0 DEFINITIONS.**

    1.1    "Accused Product" means any device, apparatus, system, service, or other product that is made, sold, offered for sale, leased, purchased, licensed or imported by or for Juniper.

    1.2    "Fenner Patents" means (i) all patents and patent applications (along with patents issuing thereon) in all jurisdictions worldwide that are, as of the Effective Date, assigned to, owned by, or controlled by [Peter] Fenner, Fenner or its Affiliates, or to which [Peter] Fenner, Fenner or its Affiliates have a right to assert a claim of infringement or to grant licenses, including without limitation U.S. Patent Nos. 5,561,706 and 6,819,670 and (ii) any divisionals, continuations, continuations-in-part, reissues, reexaminations, utility models, foreign counterparts, parents or extensions thereof, and any patent or patent application whose priority is based upon or in common with such.

    . . . .

**2.0   RELEASES.**

. . . .

    2.4   Fenner and P. Fenner each represent and warrant, that as of the Effective Date of this Agreement and to the best of their knowledge, no other intellectual property rights would be required for Juniper to practice the Fenner Patents for the Accused Products or otherwise exercise the rights granted to it under this Agreement. To the extent that Fenner and P. Fenner do not have the rights to grant fully the releases and other rights set out in this Agreement, each of them grants the broadest such rights that it is entitled to grant consistent with the terms set out herein.

    2.5   <u>Noninfringing acts</u>. Fenner and P. Fenner each represent and warrant that as of the Effective Date the acts undertaken by Juniper in making, having made, using, selling, or offering to sell the M20 product, with or without the GGSN Worldwide software, do not constitute acts of infringement under any provision of 35 U.S.C. § 271.

In summary, the Settlement Agreement granted releases and created rights and obligations for both parties. Juniper paid Fenner $250,000 as consideration.

In October 2010, Fenner sued Juniper in the Eastern District of Texas, alleging that Juniper products released after the Effective Date infringed the Fenner Patents.[1] The M20 was not cited for infringement. Based upon a forum selection clause in the Settlement Agreement, Juniper filed an action in the Northern District of Texas seeking a declaratory judgment that the Settlement Agreement was valid and enforceable and that, pursuant to its terms, Juniper was not liable for infringement of the Fenner Patents. Juniper also sought damages for breach of the Settlement Agreement.

After the parties filed several venue-based motions, Fenner voluntarily dismissed its action in the Eastern District of Texas. Fenner then filed an

---

[1] In accordance with paragraph 9.13 of the Settlement Agreement, discussed *infra*, Fenner waited three years before filing this action.

amended answer in the Northern District of Texas and counterclaimed for infringement of its patents by Juniper's new products. Fenner also moved for partial summary judgment, seeking a declaratory judgment that the Settlement Agreement did not release Juniper from liability for infringement and that Fenner did not breach the Settlement Agreement. Juniper filed a response and cross-motion for partial summary judgment.

On November 3, 2011, the district court held a hearing on the parties' cross-motions. The district court ruled from the bench that paragraph 2.4 of the Settlement Agreement allows Juniper to practice the Fenner Patents for the Accused Products without limitation. The district court reasoned that paragraph 2.4 granted Juniper this right because it states that "no other intellectual property rights would be required for Juniper to practice the Fenner Patents for the Accused Products," and because "Accused Product" was defined in the Settlement Agreement "as broad as it could be." The district court found that paragraph 2.4 was not limited, as Fenner argued, to Juniper products of which Fenner had knowledge or could have had knowledge when Fenner entered into the Settlement Agreement. Rather, the district court determined that Juniper was granted the "broadest such rights" to practice the Fenner Patents.[2] The district court concluded that its ruling was "logical on its face" and "further bolstered by the language in [paragraphs] 2.1, 2.5, 5.1 and 6.1 of the Agreement, and by the Agreement viewed as a whole."

After the oral ruling, Juniper stated that it would not pursue its breach of contract claim, and the court consequently declared that Juniper waived any claim for relief other than the oral ruling. On November 15, 2011, the district court entered a written judgment consistent with its oral ruling, and dismissed Fenner's counterclaims with prejudice. Fenner timely appealed.

---

[2] The phrase "broadest such rights" appears in paragraph 2.4.

## II. APPLICABLE LAW AND STANDARD OF REVIEW

### A. Applicable Law

When jurisdiction is based on diversity, we apply the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Texas law applies in this case. To determine Texas law, we look to the final decisions of Texas's highest court. *Citigroup, Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 371 (5th Cir. 2011). Without a final decision by that court on the issue presented, we must use our best judgment to determine how Texas's highest court would resolve the issue. *Id.* "[I]n the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it." *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991) (citation and internal quotation marks omitted).

### B. Standard of Review

We review a ruling on cross-motions for summary judgment de novo, addressing each motion independently. *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009). "Our inquiry is limited to the summary judgment record before the trial court." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 442 (5th Cir. 2009) (internal quotation marks omitted). "We must view the evidence in the light most favorable to the [nonmovant], and the movant has the burden of showing this court that summary judgment is appropriate." *Id.* (internal citations omitted). Summary judgment is appropriate only where there is no genuine dispute of material fact and the movant is legally entitled to prevail. *Id.* at 442-43; *see* Fed. R. Civ. P. 56(a). "A genuine [dispute] of material fact exists if a reasonable jury could enter a verdict for the nonmovant." *QBE Ins. Corp.*, 591 F.3d at 443 (citation omitted).

## III. DISCUSSION

The district court ruled that paragraph 2.4 of the Settlement Agreement permits Juniper to practice the Fenner Patents for any product that qualifies as an "Accused Product." The district court found that the Settlement Agreement did not limit Juniper's right to practice the Fenner Patents to products that Fenner knew of as of the Effective Date. Given the broad definition of "Accused Product," this ruling is tantamount to holding that Juniper can practice the Fenner Patents for any product that it makes for the duration of the Settlement Agreement—namely, until the Fenner Patents expire. In reaching this conclusion, the district court relied heavily on language in the first sentence of paragraph 2.4, which we will call the "Warranty Clause":

> Fenner and P. Fenner each represent and warrant, that as of the Effective Date of this Agreement and to the best of their knowledge, no other intellectual property rights would be required for Juniper to practice the Fenner Patents for the Accused Products or otherwise exercise the rights granted to it under this Agreement.

Although it did not call the Warranty Clause a license, the district court reasoned that the clause in effect functioned as one.[3]

We disagree with the district court. The relationship between paragraphs 2.4 and 2.5 of the Settlement Agreement persuades us that the Warranty Clause did not grant Juniper a license to practice the Fenner Patents for products Fenner did not know of as of the Effective Date.

### A.  Redundancy

Texas law governs the Settlement Agreement, so we must attempt to harmonize and give effect to all of the provisions therein so that none will be rendered meaningless. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d

---

[3] In its oral ruling, the district court stated that "whether [paragraph 2.4] is interpreted as a license, or just the basis for an estoppel . . . is not material." The court determined that regardless of its nomenclature, the Warranty Clause would grant the unfettered right to practice the Fenner Patents.

462, 464 (Tex. 1998). We hold that the Warranty Clause does not grant a license under Texas law because if it did, paragraph 2.5 would be superfluous.

In paragraph 2.5, Fenner "represent[ed] and warrant[ed] that as of the Effective Date the acts undertaken by Juniper in making, having made, using, selling, or offering to sell the M20 product, with or without the GGSN Worldwide software, do not constitute acts of infringement under any provision of 35 U.S.C. § 271." Juniper argues that paragraph 2.5 differs from the Warranty Clause because paragraph 2.5 provides that the M20 falls outside of any valid claim for infringing the Fenner Patents whereas the Warranty Clause confers Juniper's right to practice the Fenner Patents for Accused Products that do or might give rise to an infringement claim. This is an incorrect understanding of how the two provisions interact.

Although paragraphs 2.4 and 2.5 are formally different under Juniper's interpretation of the Warranty Clause, they lack independent functions. As Fenner correctly argues:

> regardless of how [p]aragraph 2.5 accomplishes its goal, that provision expressly allows Juniper to continue to manufacture the M20 as it was configured on the Effective Date. Under the interpretation of Juniper and the district court, however, [p]aragraph 2.5 would have been wholly unnecessary because all Juniper products—including the M20—are subject to a blanket license purportedly granted by [p]aragraph 2.4.

This functional redundancy is problematic. If the Warranty Clause grants a license as broad as Juniper claims, then Fenner had no reason to acknowledge that the M20 is noninfringing. In short, the function that Juniper attributes to paragraph 2.4 renders the function of paragraph 2.5 redundant.

Because Texas law requires agreements to be construed so that each contractual provision has some effect, *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 332 (Tex. 1983), Juniper's interpretation of the Warranty Clause is invalid. The district court therefore erred in granting summary judgment for

Juniper. Although the relationship between paragraphs 2.4 and 2.5 demonstrates why Juniper cannot prevail, we will address several points raised in the district court's judgment, and by Juniper on appeal, to confirm that the Settlement Agreement does not confer a license to practice the Fenner Patents except as set out in paragraph 2.5 therein.

**B.    The Warranty Clause**

Once again, the Warranty Clause provides:

> Fenner and P. Fenner each represent and warrant, that as of the Effective Date of this Agreement and to the best of their knowledge, no other intellectual property rights would be required for Juniper to practice the Fenner Patents for the Accused Products or otherwise exercise the rights granted to it under this Agreement.

Juniper argues that the clause is a license allowing it to practice the Fenner Patents for any product falling under the definition of "Accused Product," regardless of whether Fenner knew or could have known about that product. *Henry v. A.B. Dick Co.*, 224 U.S. 1, 24 (1912) (a "license" to a patent "is a mere permission granted by the patentee"), *overruled on other grounds by Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502 (1917). Fenner contends that the clause is not a license but is merely a representation and warranty that Fenner did not know as of the Effective Date of other intellectual property rights that would be required for Juniper to practice the Fenner Patents for Juniper products that Fenner knew of as of the Effective Date.

For the reasons cited *infra*, we interpret the clause in a way that is consistent with Fenner's conclusion that the clause is not a license, and thus find that the Warranty Clause supports our judgment for Fenner.

   *1.    "Best of Knowledge"*

The district court's judgment rests on its finding that the definition of "Accused Products" in the Warranty Clause was not limited by the "best of knowledge" clause, a provision in the Warranty Clause qualifying that the

representation and warranty were made "as of the Effective Date . . . and to the best of [Fenner's] knowledge." The ruling stated that the "best of knowledge" clause related to Fenner's knowledge of its intellectual property, but not to Fenner's knowledge of Accused Products as of the Effective Date.

In *Commercial Standard Insurance Co. v. Hartzog*, which concerned the interpretation of an exclusion provision in an insurance policy, the court held that where a contractual phrase modifies an entire provision, a court cannot construe it to modify only one of two clauses in that provision. 619 S.W.2d 417, 419 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). Citing *Hartzog*, Fenner argues that the "best of knowledge" clause means that everything it represented and warranted in the Warranty Clause—the intellectual property and the Accused Products—is made subject to its knowledge as of the Effective Date. Juniper responds that the court in *Hartzog* held that the phrase at issue modified both of the descriptive clauses of the condition because they followed in a parallel structure. *Id.* at 418-19 (the phrase "while such automobile is not being used exclusively" modified "in the business of the named insured" as well as "over a route the named insured is authorized to serve by federal or public authority"). According to Juniper, *Hartzog* supports the district court's finding that the "best of knowledge" clause modifies the primary subject and verb clause in the Warranty Clause, not the objects of that subject/verb phrase.[4]

Our understanding of the rules of English grammar differs from the respective understandings of the parties. The "best of knowledge" clause does not directly—let alone exclusively—modify what Juniper wrongly calls the "subject/verb phrase" of the sentence. It is also not clear from the text that the

---

[4] The "subject/verb phrase" to which Juniper refers in its brief is: "no other intellectual property rights would be required for Juniper to." Juniper argues that the condition does not apply to the following phrase: "practice the Fenner Patents for the Accused Products or otherwise exercise the rights granted to it under this Agreement."

9

"knowledge" component of the clause extends directly to what the parties call the "objects" of the sentence.

The "best of knowledge" clause consists of two adverbial phrases: "as of the Effective Date of this Agreement" and "to the best of [Fenner's] knowledge." These phrases modify the two verbs of the Warranty Clause: "represent" and "warrant." The semantic result of this modification depends on how these two qualified verbs affect the object of the sentence—the declarative content clause "no other intellectual property rights would be required for Juniper to practice the Fenner Patents for the Accused Products or otherwise exercise the rights granted to it under this Agreement."

### 2. "Other" Rights

In the declarative content clause, the word "other" ("no other intellectual property rights would be required") clearly ties paragraph 2.4's representation and warranty to some other intellectual property right. If one understands the Warranty Clause to be a representation and warranty not about Fenner's rights, but instead about the rights of third parties, then the clause reads less like a license and more like a representation that the right to practice the Fenner Patents for the Accused Products—which include the M20 router—does not infringe patents or other intellectual property rights owned by third parties. Under our interpretation of the Warranty Clause, paragraph 2.4 is an epistemic statement about the universe of intellectual property: namely, no one has intellectual property rights that would prevent Juniper from fully exercising its rights under the Settlement Agreement.

### 3. "Accused Products"

The parties discuss at length in their briefs whether the term "Accused Product" includes products developed after the Effective Date. Juniper may be correct that the term, read alone, may include future products. What matters, however, is how the term is used in the Settlement Agreement. And the simple

fact is that it is used only in the Warranty Clause, and (as we have seen) it is there limited to Juniper products of which Fenner had knowledge as of the Effective Date. Even more importantly, the Warranty Clause, unlike paragraph 2.5, does not grant to Juniper the affirmative right to practice the Fenner Patents. Thus, even if we were to adopt Juniper's broad definition of "Accused Products," the Warranty Clause would grant no license to practice the Fenner Patents with respect to those future Juniper products.[5]

## C. The Savings Clause

Our interpretation of the Warranty Clause is reinforced by the second sentence of paragraph 2.4 (the "Savings Clause"), which states:

> To the extent Fenner and P. Fenner do not have the rights to grant fully the releases and other rights set out in this Agreement, each of them grants the broadest such rights that it is entitled to grant consistent with the terms set out herein.

The district court homed in on the phrase "broadest such rights" in support of its ruling that "Juniper is granted the 'broadest such rights' to practice the Fenner Patents." Also, Juniper invoked this issue on appeal as further supporting the district court's judgment.

The district court's reliance on the Savings Clause stems from Juniper's repeated claims that this clause gives it the "broadest rights possible." Often, when Juniper lays claim to the "broadest such rights" to practice the Fenner Patents, it excises the first clause of the sentence. Only twice in its brief does Juniper reference the full sentence. This omission is glaring: the first clause is a limiting provision expressly stating that such rights are given to the extent that Fenner cannot grant fully the releases and rights under the Settlement

---

[5] Moreover, as stated in paragraph 4.4, the M20 product is capable of being converted to GGSNs by Ericsson, which was apparently a working partner of Juniper as of the Effective Date. Because the M20 had been converted in this way and had been installed in the United States as of the Effective Date, the term "Accused Products" in paragraph 2.4 operates to include the M20s in their unmodified and modified forms.

11

Agreement. In short, "the broadest such rights" are necessarily narrower than the rights "fully" granted in the Settlement Agreement. The appropriateness of the phrase "broadest such rights" as support for the district court's judgment is undermined by the unequivocal limiting language that immediately precedes this phrase.[6]

## D.    A Supplementary Warranty

Our interpretation of the Warranty Clause is further reinforced by a consideration of how it supplements the warranty in paragraph 4.2, which provides:

> Fenner and P. Fenner represent and warrant to Juniper that . . . (b) Fenner owns the Fenner Patents, and that no other third party owns any right to recover for infringement of the Fenner Patents by Juniper; . . . .

The Warranty Clause and paragraph 4.2(b) are complementary provisions. Whereas paragraph 4.2(b) is a representation and warranty that no third party can recover for infringement of the Fenner Patents by Juniper, the Warranty Clause performs the same function with respect to intellectual property rights "other" than the Fenner Patents. Together, these two provisions provide a broad representation and warranty against the entire universe of third-party claims that could be brought against Juniper for exercising its rights under the Settlement Agreement.

## E.    Harmony

Briefly, we now address several provisions that the district court concluded in its oral ruling would be "superfluous or [illogical]" if we did not interpret paragraph 2.4 as granting a license, and which Juniper raised on appeal. The

---

[6] Under Texas law, courts "must be particularly wary of isolating individual words, phrases, or clauses and reading them out of the context of the document as a whole." *Alpert v. Riley*, 274 S.W.3d 277, 288 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995)).

paragraphs at issue are: 2.1[7] and 2.5 (jointly), 5.1, and 6.1. Although not discussed in the district court's ruling, we also address paragraphs 9.13 and 3.1 of the Settlement Agreement.

### 1. Paragraphs 2.1 and 2.5

Juniper claims that, under Fenner's interpretation of the Warranty Clause, paragraphs 2.1 and 2.5 together render paragraph 2.4 meaningless because paragraph 2.1 covers past acts, and paragraph 2.5 covers the manufacture and sale of future M20s. We need not address that claim because our interpretation of the Warranty Clause is not susceptible to this criticism. Because we understand the Warranty Clause to be a representation and warranty about "other" rights, Fenner's reading of paragraph 2.5—as a license—gives all three paragraphs independent meaning and purpose.

### 2. Paragraph 5.1

Paragraph 5.1 provides that the Settlement Agreement "shall remain in full force and effect until the expiration of the last to expire of the Fenner Patents." Fenner argues that it makes sense that the Settlement Agreement would "remain in full force and effect" until the last of the Fenner Patents expired because of the license that paragraph 2.5 grants. Juniper argues that Fenner does not offer a "meritorious . . . interpretation" of this paragraph because paragraph 2.5 does not grant a license. Fenner responds that Juniper's reading of paragraph 2.5 is incorrect.

Either party's interpretation could be harmonized with paragraph 5.1 if impermissibly isolated from the rest of the Settlement Agreement. But Juniper's disagreement with Fenner on this issue rests on its reading of paragraph 2.5, which, as discussed *supra*, would be redundant in light of Juniper's

---

[7] In paragraph 2.1, Fenner released Juniper from all actions and claims "for known and unknown acts that happened prior to the Effective Date, and covenant[ed] not to sue or threaten to sue [Juniper] on account of any such claim."

interpretation of paragraph 2.4. Accordingly, we are not moved by Juniper's argument regarding this issue.

### 3. Paragraph 6.1

In paragraph 6.1 the parties agreed that neither one could "assign any rights or delegate any duties . . . to any third party without the prior written consent of the others." However, Juniper may assign its rights under the Settlement Agreement to its affiliates, and may assign its rights and delegate its duties to either "(a) an acquirer of all or substantially all of the equity or assets of its business to which this Agreement relates or (b) the surviving entity in any merger, consolidation, equity exchange, or reorganization of its business to which this Agreement relates." If an assignment occurs under paragraph 6.1(ii)(a) or (b), paragraph 6.1 further provides that:

> the licenses and covenants granted under the Agreement shall continue with respect to the products and services of the business that, on the date of the assignment, either (1) are offered by Juniper, or (2) Juniper has made substantial plans toward release, and shall continue for any future versions, modifications and additions to any of the above; such licenses and covenants shall not apply to other products and services of the acquiring or merging entity. All rights and covenants contained herein shall run with the Fenner Patents and shall be binding on any successors-in-interest or assigns thereof.

The parties dispute how the provision on the continuation of the licenses and covenants in the event of assignment affects the Warranty Clause.

Juniper argues that the Warranty Clause and paragraph 6.1 are in harmony under the district court's ruling. In its brief, Juniper contends that it has all the intellectual property rights it needs to practice the Fenner Patents for the Accused Products, and in the future may assign those rights to another party. In addition, Juniper argues that the assigned rights shall apply to new products that are not released until after the Settlement Agreement, including any future versions, modifications, and additions to such new products. Juniper

further argues that Fenner's interpretation of the Warranty Clause cannot be reconciled with paragraph 6.1, which refers to new and unreleased products, and to future versions of existing products.

Fenner correctly concedes that the cited language contemplates future products. But Fenner is also correct that paragraph 6.1 "neither creates the assignable rights nor 'confirms' the scope of those rights, which are conferred by numerous other provisions." Paragraph 9.13, set out *infra*, is one such provision. Paragraph 9.14 is another.[8] If Juniper assigned the rights under either paragraph to an acquirer, then paragraph 6.1 might control the scope of that assignment. Fenner concludes that this provision in paragraph 6.1 "cannot control the scope of representations and warranties in Paragraph 2.4." We agree. The debate over paragraph 6.1 boils down to a disagreement over the meaning of the very rights-creating clauses that, according to Juniper, this paragraph purports to inform. For this reason, Juniper's argument concerning this issue fails to demonstrate why our decision to find that paragraph 2.4 does not grant a license would be irreconcilable with the guarantees in paragraph 6.1.

4. *Paragraph 9.13*

Under paragraph 9.13, Fenner agrees not to "make any assertion or bring any action against Juniper and its Affiliates for patent infringement for a period of three (3) years from the Effective Date." As we read this provision, the parties clearly expected future litigation with respect to the Fenner Patents. The three-year period seems to us to have been a temporary cease-fire, a view reinforced by the fact that the instant case materialized on schedule. Had the parties really intended the kind of broad license that Juniper claims was granted by the Settlement Agreement, then paragraph 9.13 would have been unnecessary except, perhaps, for patents acquired after the Effective Date. Juniper argues

---

[8] Under paragraph 9.14, Fenner may not make disparaging remarks about Juniper.

that paragraph 9.13 should be construed as referring to claims for infringement of patents that Fenner acquired after the Effective Date. However, paragraph 9.13 nowhere provides that suits after the three-year period are limited to suits regarding "new" patents. The very existence of paragraph 9.13 supports, if only modestly, our interpretation of the Warranty Clause.

    5.    *Paragraph 3.1*

The consideration payable by Juniper to Fenner under the Settlement Agreement is specified in paragraph 3.1: $250,000. The district court commented to counsel for Juniper that "this is a very cheap arrangement if you're getting what you say you got." In their briefs, the parties pick up on the consideration issue and the district court's comment. Fenner argues the amount of the consideration is commensurate with the limited rights conveyed by the Settlement Agreement. Juniper, on the other hand, argues that the record is undeveloped on the relationship between the amount of the consideration and the rights conveyed by the Settlement Agreement. Our conclusion is that the record is simply uninstructive on the significance of the amount of the consideration, and we do not consider it in arriving at our interpretation of the Settlement Agreement.

**F.**    **Coda**

We make one further point in support of our conclusion. Both Fenner and Juniper are sophisticated parties when it comes to patent licensing, and each has been and is represented by equally sophisticated counsel. If the parties had intended to grant a license of the sort that Juniper claims was created by the Settlement Agreement, it would have been easy for the parties and their counsel to do so, leaving no room for debate. And such a license would have borne no resemblance to those provisions of the Settlement Agreement that Juniper interprets as a license to practice the Fenner Patents for products other than "the M20 product, with or without the GGSN Worldwide software."

## IV. CONCLUSION

For the foregoing reasons, we reverse the district court's judgment, and we remand to the district court to rule on Fenner's counterclaims for patent infringement. REVERSED and REMANDED. Costs shall be borne by Juniper.